In the INTEREST OF TIFFANY W. and MYOKRA W., Children Under the Age of Eighteen:

STATE of Wisconsin EX REL. Michael O. BOHREN, Guardian ad Litem for Tiffany W. and Myokra W., Petitioner,†

v.

CIRCUIT COURT FOR MILWAUKEE COUNTY, the Honorable Mel Flanagan, Presiding, and Milwaukee County Department of Human Services, Respondents. [Case No. 95–0001–W.]

STATE of Wisconsin EX REL. Clifford O'CONNOR, Petitioner,

v.

CIRCUIT COURT FOR WAUKESHA COUNTY, the Honorable J. Mac Davis, Presiding, Beverly C. and David C., Respondents.† [Case No. 95–0036–W.]

Court of Appeals

*Nos. 95–0001–W, 95–0036–W. Submitted on petitions January 3, 1995 (writ of mandamus) and January 9, 1995 (writ of prohibition).—Decided March 3, 1995.*

(Also reported in 532 N.W.2d 135.)

---

†Petitions to review denied.

On behalf of the petitioner, Michael O. Bohren, guardian ad litem, the cause was submitted on the petition of *Michael O. Bohren* of West Allis.

On behalf of the respondent, Circuit Court for Milwaukee County, the Honorable Mel Flanagan, the cause was submitted on the response of *Linda S. Balisle* of *Balisle & Roberson, S.C.* of Madison.

On behalf of the respondent, Milwaukee County Department of Human Services, the cause was submitted on the letter response of *John Jorgensen,* principal assistant corporation counsel of Milwaukee.

On behalf of Tiffany W. and Myokra W., the cause was submitted on the response of *Michael J. Vruno, Jr.,* guardian ad litem, of Milwaukee, and *James A. Walrath,* Legal Aid Society of Milwaukee, Inc. of Milwaukee.

On behalf of Gwendolyn E., the cause was submitted on the letter response of *Sheila M. Smith* of Milwaukee.

On behalf of the petitioner, Clifford O'Connor, the cause was submitted on the petition of *John Jorgensen,* principal assistant corporation counsel of Milwaukee.

On behalf of the respondent, Circuit Court for Waukesha County, the Honorable J. Mac Davis, the

cause was submitted on the response of *Julie M. Gay* of Waukesha.

On behalf of the respondents, David C. and Beverly C., the cause was submitted on the response of *Victoria J. Schroeder* of Delafield.

On behalf of the guardian ad litem, Michael O. Bohren, the cause was submitted on the response of *Michael O. Bohren,* of West Allis.

On behalf of the attorney general, the cause was submitted on the *amicus curiae* response of *James E. Doyle,* attorney general, and *Gregory M. Posner-Weber,* assistant attorney general.

On behalf of Tiffany W. and Myokra W., the cause was submitted on the response of *Michael J. Vruno, Jr.,* guardian ad litem, of Milwaukee, and *James A. Walrath,* Legal Aid Society of Milwaukee, Inc. of Milwaukee.

On behalf of Gwendolyn E., the cause was submitted on the letter response of *Sheila M. Smith* of Milwaukee.

On behalf of Tiffany W. and Myokra W., the cause was submitted on the letter response of *Marjorie A. Wendt* of *Schwei & Wendt, S.C.* of Brookfield.

Before Cane, P.J., Anderson and Wedemeyer, JJ.[1]

CANE, P.J. As a result of a 1990 determination that they were children in need of protection or ser-

---

[1] By order of this court's Chief Judge, *State ex rel. Michael O. Bohren v. Circuit Court for Milwaukee County,* No. 95-0001-W, *State ex rel. Clifford O'Connor v. Circuit Court for Waukesha County,* No. 95-0036-W, and *State ex rel. Tiffany W. and Myokra W. v. Circuit Court for Milwaukee County,* No. 95-0045-W, were consolidated for disposition, and this three-judge panel was appointed to preside over the consolidated cases.

vices, Tiffany W. and her sister, Myokra W., were placed in the legal custody of the Milwaukee County Department of Human Services (MCDHS). Since 1990, they have resided at the licensed Waukesha County foster home of David and Beverly C., and the circuit court for Milwaukee County has reviewed various permanency plans proposed for the children by MCDHS, including MCDHS's decision to arrange for the children to visit with their maternal aunt as a prelude to a potential permanent placement with her.

In November 1993, the foster mother, dissatisfied with MCDHS's decisions regarding visitation, filed a petition under § 48.64(4)(c), STATS.,[2] asking the circuit court for Waukesha County, the Honorable J. Mac Davis presiding, to review MCDHS's decisions in this regard. The circuit court for Waukesha County entered an order regulating visitation. In December 1994, the foster mother petitioned the circuit court for Waukesha County for guardianship of the children, to terminate parental rights and to review MCDHS's decisions regarding visitation and its plan to permanently place the children with their maternal aunt. The circuit court for Waukesha County found MCDHS in contempt for violating its order regulating visitation; the guardianship and termination of parental rights proceedings are pending.

Clifford O'Connor, acting director of MCDHS, petitions this court to exercise its supervisory jurisdiction over the circuit court for Waukesha County and the Honorable J. Mac Davis to prohibit the following proceedings in that court: (1) review of MCDHS's decisions involving Tiffany W. and Myokra W.; (2) contempt proceedings against MCDHS under ch. 785, STATS.; and (3)

---

[2] All references are to the 1993-94 statutes.

the foster mother's petitions for guardianship and termination of parental rights (TPR) under ch. 48, STATS. We have received and considered responses to O'Connor's petition. Proceedings in the circuit court for Waukesha County have been stayed pending disposition of O'Connor's petition.

The first issue is whether the circuit court for Waukesha County has concurrent jurisdiction with the circuit court for Milwaukee County in matters relating to the guardianship, care and placement of the children as well as jurisdiction to hear the petitions to terminate parental rights. We conclude that it does. The second issue is whether the Waukesha court erroneously exercised its discretion to entertain those proceedings. We conclude that it did, and we hold that the principles governing the exercise of concurrent jurisdiction require the Waukesha court to refrain from exercising its jurisdiction over the children. The final issue is whether this court has authority to issue a supervisory writ of prohibition to remedy the Waukesha court's decision to exercise jurisdiction. We conclude that we do. Therefore, we grant O'Connor's petition for a supervisory writ of prohibition to the circuit court for Waukesha County.

The record in this matter consists of materials accompanying O'Connor's petition and the responses. A more detailed recitation of the relevant facts follows.

## MILWAUKEE COUNTY PROCEEDINGS

In February 1990, ten-month-old Tiffany and her newborn sister, Myokra, were placed in separate foster homes. Myokra was placed with David and Beverly C., and Tiffany joined her sister there in August 1990. On May 2, 1990, the circuit court for Milwaukee County determined that Tiffany and Myokra were children in

need of protection or services (CHIPS) under § 48.13(10), STATS., because their mother could not care for them and placed them in the legal custody of MCDHS.[3] The CHIPS dispositional order has been extended yearly, and the children continue to reside with the Waukesha County foster parents.

Since the entry of the dispositional order, MCDHS's permanency plans have been reviewed administratively and by the circuit court for Milwaukee County ("the Milwaukee court"). A November 1991 administrative review board permanency plan compliance report envisioned returning the children to their mother once she complied with certain requirements. By November 1992, the administrative review board permanency plan compliance report reflected that MCDHS favored "TPR/adoption" as a permanency plan because their mother remained unable to care for them. The report indicated that a "TPR is currently in process" and that a "TPR referral has been made to the Adoption Unit as an adoptive resource has been located." The report does not identify the adoptive resource, but it appears to have been the foster parents.

On March 15, 1994, Bonnie Finkler, the MCDHS social worker assigned to the case, submitted a "court report for extension and revision of dispositional order and permanent plan review and extension." The report indicated that as of November 1993, the permanency plan had changed from TPR/adoption to relative placement because "a viable relative resource is available for the care of these children." The report stated that the children's maternal aunt, Gwendolyn E., contacted Finkler in February 1993 to request custody of them

[3] Apparently, the identity of the children's father has not been legally determined.

and to express her concern that the biological family would lose contact with the children if they were adopted by non-relatives.[4] After being contacted by Gwendolyn E., MCDHS began arranging visits between her and the older child in furtherance of its new permanency plan and recommended an independent home study of Gwendolyn E. to evaluate her potential as a long-term placement resource for the children. The report asked the Milwaukee court to extend the CHIPS dispositional order for a year.

At a May 19, 1994, hearing before the Milwaukee court, which the foster parents attended, there was extensive discussion about MCDHS's relative-placement permanency plan and the roles the foster parents and the biological family, specifically the aunt, would play under the new plan. Visitation issues were also discussed. The Milwaukee court adopted a permanency plan which provided that the children would continue in foster care with a goal of greater association and potential placement with the biological family. In an October 31 order memorializing the May 19 hearing, the Milwaukee court recommended that a neutral therapist supervise the children's visits with their aunt and extended biological family.

The Milwaukee court reviewed visitation again on August 23 and ordered that visitation continue under the supervision of MCDHS and subject to the professional opinion of the therapist working with the biological and foster families and the children. The permanency plan and visitation matters were again reviewed by the Milwaukee court on November 18. In an order memorializing the hearing, the Milwaukee court extended weekly visitation with the aunt to over-

---

[4] The report stated that Gwendolyn E. had originally advocated placing the children with the foster family.

night visitation. The court again expressed its approval of MCDHS's plan that the children continue in foster care with the goal of greater association and potential placement with their aunt.

A December 9, 1994, order of the Milwaukee court ordered MCDHS to implement a specific visitation schedule for December 8, 1994, through January 9, 1995. A December 22 order established the Christmas visitation schedule.

## WAUKESHA COUNTY PROCEEDINGS

Dissatisfied with decisions made by MCDHS in this case, the foster mother, since November 1993, has sought relief in the circuit court for Waukesha County ("the Waukesha court"). The Waukesha court has had two sets of hearings in this case, and the foster mother's petitions for guardianship and TPR are pending in that court.[5]

The first set of hearings was held on December 14, 1993, and January 3 and 5, 1994, on the foster mother's November 8, 1993, petition under § 48.64(4)(c), STATS.,[6]

---

[5] In a December 9, 1994, petition to the Waukesha court, the foster mother asked to be appointed ch. 880, STATS., guardian for the children. On December 12, 1994, the Waukesha court appointed her temporary guardian for the children for a period of sixty days. On December 16, the foster mother, in her capacity as temporary guardian, filed petitions to terminate parental rights to the children. The guardianship and TPR proceedings are stayed pending disposition of O'Connor's petition.

[6] Section 48.64(4)(c), STATS., provides:

The circuit court for the county where the child is placed has jurisdiction upon petition of any interested party over a child who is placed in a foster home, treatment foster home or group home. The circuit court may call a hearing, at which the head of the home and the supervising agency under [§ 48.64] sub. (2) shall be present, for the purpose of reviewing any decision or order of that agency

seeking review of MCDHS's 1993 decisions to arrange visitation with the children's aunt. The foster mother contended that MCDHS lacked authority to arrange such visits and that the visits were detrimental to the children's best interests. In a January 31, 1994, order, the Waukesha court placed various conditions on visitation and enjoined MCDHS from authorizing or permitting visits until those conditions were met.[7] The court also required a home study of the aunt to determine whether her home would be an appropriate potential placement for Tiffany.

The second hearing was held on December 20, 1994 to address: (1) the Waukesha court's December 9, 1994, order to show cause why MCDHS should not be held in contempt for violating its January 31, 1994, visitation order; and (2) the foster mother's December 8, 1994, petition under § 48.64(4)(c), STATS., seeking review of MCDHS's Christmas visitation schedule and its plan to permanently place the children with their aunt.

At the December 20 hearing, the Waukesha court concluded that § 48.64(4)(c), STATS., granted it jurisdiction to review MCDHS's decisions. A December 22 order memorializing that hearing found that MCDHS's decisions regarding visitation with the aunt were unreasonable. The Waukesha court further found that the Milwaukee court had not expressed a clear intent

---

involving the placement and care of the child. If the child has been placed in a foster home, the foster parent may present relevant evidence at the hearing. The court shall determine the case so as to promote the best interests of the child.

[7] Among other things, the Waukesha court required the aunt to submit to a psychological evaluation to determine the suitability, appropriateness and value of visitation. The order also regulated the frequency and circumstances of the visits.

to supersede its January 31 order regulating visitation.[8] Therefore, MCDHS should have complied with the Waukesha court's January 31 order and was in contempt for arranging visits which did not comply with the order. The Waukesha court imposed a remedial sanction of $2,000 per day and required that MCDHS "resign and remove itself as legal custodian and supervising agency . . . ." However, MCDHS could purge the contempt by complying with the terms of the Waukesha court's January 31 order regulating visitation.

## PROCEEDINGS IN THE COURT OF APPEALS

In his January 6, 1995, petition to this court, Clifford O'Connor, acting director of MCDHS, asks us to prohibit the Waukesha court from exercising jurisdiction in matters involving the children because the Milwaukee court has exclusive original jurisdiction under § 48.13, STATS. O'Connor argues that, at best, the Waukesha court has concurrent jurisdiction, which it should not exercise. He suggests that an appeal from a Waukesha court order would be an inadequate remedy because it would further delay resolution of the relative authority of the two circuit courts.

In its response, the Waukesha court argues that the criteria for issuing a supervisory writ are not fulfilled because: (1) an appeal would be an adequate

---

[8] We note that on May 19, 1994, the Milwaukee court stated that it had "revised" the Waukesha court's January 31 order. Specifically, the Milwaukee court stated that visitation could occur upon the recommendation of the therapist, the caseworker and the guardian ad litem appointed by the Milwaukee court. The Waukesha court had imposed tighter conditions on visitation, requiring the completion of a psychological evaluation and home study of the aunt before any visits could occur.

remedy; (2) O'Connor has not demonstrated irreparable harm if a writ does not issue; (3) there is no plain legal duty to refrain from hearing the foster mother's guardianship, TPR and § 48.64(4)(c), STATS., petitions; and (4) O'Connor's request for a supervisory writ was not promptly made. The foster parents make substantially similar arguments.

Attorney Michael Bohren, whom the Waukesha court appointed guardian ad litem for Tiffany and Myokra, argues that proceedings may be held in Waukesha County. The Attorney General and the guardian ad litem appointed by the Milwaukee court, Attorney Michael Vruno, argue that exclusive original jurisdiction is with the Milwaukee court. We have also considered responses filed by the aunt and Attorney Marjorie Wendt, who states that she is adversary counsel for the children.

## DISCUSSION

It is undisputed that the children are subject to a CHIPS dispositional order entered by the Milwaukee court in 1990 and that the Milwaukee court has continued to exercise its jurisdiction over them by extending the dispositional order yearly and reviewing permanency plans proposed by MCDHS. *See* § 48.38, STATS.[9] Under § 48.13, STATS., the CHIPS statute, "[t]he court has exclusive original jurisdiction over a child alleged to be in need of protection or services which can be ordered by the court."

It is also undisputed that the foster mother filed petitions in Waukesha County under § 48.64(4)(c),

[9] Section 48.38(5)(c)4 and 6, STATS., contemplates that a court reviewing a permanency plan shall determine the progress toward obtaining a permanent placement for the child or returning the child to his or her home.

420

STATS., to have the circuit court of the county where the foster children are placed review decisions made by MCDHS. Section 48.64(4)(c) provides:

> The circuit court for the county where the child is placed has jurisdiction upon petition of any interested party over a child who is placed in a foster home, treatment foster home or group home. The circuit court may call a hearing, at which the head of the home and the supervising agency under [§ 48.64] sub. (2) shall be present, for the purpose of reviewing any decision or order of that agency involving the placement and care of the child. If the child has been placed in a foster home, the foster parent may present relevant evidence at the hearing. The court shall determine the case so as to promote the best interests of the child.

The meaning of § 48.64(4)(c), STATS., can be derived by statutory construction. The construction and application of a statute to undisputed facts presents a question of law which we decide independently. *See Chang v. State Farm Mut. Automobile Ins. Co.*, 182 Wis. 2d 549, 560, 514 N.W.2d 399, 403 (1994). We look to the language of the statute to determine the legislature's intent. *In re J.W.T.*, 159 Wis. 2d 754, 761, 465 N.W.2d 520, 523 (Ct. App. 1990).

The plain language of § 48.64(4)(c), STATS., authorizes the Waukesha court to review any MCDHS decision or order involving the placement and care of children in a Waukesha County foster home. Therefore, under the plain language of the statute, the Waukesha court had jurisdiction to entertain the foster mother's November 1993 and December 1994 petitions

under § 48.64(4)(c) and the contempt proceedings relating to the January 31, 1994 order.[10]

We also conclude that the Waukesha court has jurisdiction under § 48.14, STATS., to entertain the foster mother's petitions for guardianship and TPR. Section 48.14 states that "[t]he court has exclusive jurisdiction over" TPR proceedings and the appointment of a guardian under ch. 880, STATS., for a child in need of protection or services. Section 48.14(1) and (2)(b). "The court" is defined as "the court assigned to exercise jurisdiction under this chapter." Section 48.02(2m), STATS. No party questions that the Waukesha court is a ch. 48, STATS., court for these purposes.

Having concluded that the Waukesha court has jurisdiction to entertain proceedings involving the children, we turn to whether it erred in exercising that jurisdiction in a case in which the Milwaukee court has continuously exercised jurisdiction in the CHIPS proceedings since 1990.

> Where two actions between the same parties, on the same subject, and to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction, its power being adequate to the administration of complete justice, retains its jurisdiction and may dispose of the whole controversy, and no court of coordinate power is at liberty to interfere with its action.

---

[10] A court may use its contempt power to enforce its orders. Section 785.01(1)(b) and (2), STATS.

*Syver v. Hahn*, 6 Wis. 2d 154, 159-60, 94 N.W.2d 161, 164 (1959) (quoted source omitted).[11] In such a circumstance, it is reversible error for the second court to also assume jurisdiction. *Id.* at 158, 94 N.W.2d at 163 (citing *Cawker v. Dreutzer*, 197 Wis. 98, 128-29, 221 N.W. 401, 412 (1928)). This is a public policy rule designed to "avoid conflicts and chaos in the work of independent courts and . . . promote the orderly administration of laws." *State ex rel. Milw. County Exp. Comm'n v. Spenner*, 51 Wis. 2d 138, 142, 186 N.W.2d 298, 301 (1971). "[I]nterference by one circuit court with the judgment and exercise of power by another circuit court cannot be approved." *Kusick v. Kusick*, 243 Wis. 135, 138, 9 N.W.2d 607, 608 (1943).

The purpose and applicability of this public policy rule is readily apparent in this case. The visitation recommended by MCDHS and ordered by the Milwaukee court is designed to integrate the children into their biological family in furtherance of a CHIPS permanency plan. Regardless of the merits of this approach, which are beyond the scope of this opinion, visitation, placement and related issues are appropriate topics of a permanency plan in the long-standing Milwaukee court CHIPS proceeding. The Waukesha court's parallel review of visitation and placement issues does not promote the orderly administration of the CHIPS proceeding to which the children have been subject since 1990. Additionally, it interferes with the Milwaukee court's assessment of MCDHS's progress in permanently placing the children outside of their mother's home, *see* § 48.38(5)(c)4 and 6, STATS., and

---

[11] While the foster parents may disagree with the decisions being made by the Milwaukee court and MCDHS, that does not mean the Milwaukee court is incapable of discharging its duties as the CHIPS court.

causes confusion about which circuit court order controls in a given situation.

The Waukesha court contends it has not interfered with the Milwaukee court's jurisdiction because it has only reviewed decisions made by MCDHS and has otherwise deferred to any order of the Milwaukee court which clearly addresses all of the visitation and placement issues deemed important by the Waukesha court. We disagree. The Waukesha court's decisions are plainly at odds with the Milwaukee court's decisions. Most notably, as a sanction for MCDHS's contempt of court, the Waukesha court required MCDHS to resign as the children's legal custodian. Such a requirement is inconsistent with the Milwaukee court's previous grant of legal custody to that agency as part of the CHIPS proceedings. Additionally, the Waukesha court's independent review of the aunt as a potential placement resource interferes with the Milwaukee court's pursuit of that objective as part of the CHIPS proceedings before it.

The foster parents argue that the proceedings in Waukesha and Milwaukee are not in conflict because TPR and guardianship proceedings are not pending in the Milwaukee court. Regardless of whether the Milwaukee CHIPS court may entertain TPR or guardianship proceedings as part of the CHIPS proceedings, which we do not decide here, it is clear that proceedings regarding guardianship and termination of parental rights in the Waukesha court would hinder the Milwaukee court's review of permanency planning for the children.

■
Under the facts of this case, we conclude that the Waukesha court should have refrained from exercising its jurisdiction under §§ 48.64(4)(c) and 48.14, STATS.

That the Waukesha court did not do so was an erroneous exercise of its discretion, *see Roeder v. Roeder,* 103 Wis. 2d 411, 420, 308 N.W.2d 904, 909 (Ct. App. 1981), and reversible error. *Syver,* 6 Wis. 2d at 158, 94 N.W.2d at 163.

Having found reversible error, we turn to the remedy available to this court. Section 752.02, STATS., provides that "[t]he court of appeals has supervisory authority over all actions and proceedings in all courts except the supreme court." Article VII, § 5(3) of the Wisconsin Constitution states that "[t]he appeals court may issue all writs necessary in aid of its jurisdiction . . . ."

Prohibition is within our supervisory authority. *See Dressler v. Racine County Circuit Court,* 163 Wis. 2d 622, 630, 472 N.W.2d 532, 536 (Ct. App. 1991). "Prohibition is a proper means of correcting trial court error when an appeal will come too late for effective redress." *State ex rel. Storer v. Gorenstein,* 131 Wis. 2d 342, 347, 388 N.W.2d 633, 635-36 (Ct. App. 1986). If we were to decline to exercise our supervisory jurisdiction in this case, it is likely the Waukesha court would continue exercising jurisdiction over the children, leading to further conflicting rulings and interference with the Milwaukee court's exercise of its jurisdiction over the children during the pendency of an appeal.

In addition to cases where an appeal would not afford effective redress, we may exercise our supervisory jurisdiction in cases which present an issue *publici juris,* that is, an issue of statewide concern. *State ex rel. Journal v. Jennings,* 141 Wis. 2d 618, 620, 415 N.W.2d 518, 519 (1987). "Matters which are *publici juris* are matters which by definition are assumed

425

to be of paramount importance." *State ex rel. Swan v. Elections Bd.,* 133 Wis. 2d 87, 94, 394 N.W.2d 732, 735 (1986).

O'Connor's petition presents an issue of statewide concern: the existence of concurrent and conflicting proceedings in the circuit courts of different counties and how such conflicts should be resolved. After considering all of the arguments presented, we conclude that only the exercise of our supervisory jurisdiction will bring an end to the concurrent and conflicting proceedings in this case.

The Waukesha court argues that we should not exercise our supervisory jurisdiction where the petitioner has an adequate remedy by way of an appeal. As we have already observed, an appeal would be inadequate because it would further delay the resolution of the question before this court: whether the Waukesha court should have refrained from exercising its jurisdiction under the facts of this case. We also conclude that O'Connor has established that extraordinary hardship will result if this court does not exercise its supervisory jurisdiction. *See State ex rel. Jefferson v. Roraff,* 44 Wis. 2d 250, 258, 170 N.W.2d 691, 694 (1969). We have authority to intervene where necessary "when the ordinary processes of action are inadequate to meet the situation," *United Pac. Ins. Co. v. Metropolitan Sewerage Comm'n,* 114 Wis. 2d 258, 264, 338 N.W.2d 298, 300 (Ct. App. 1983), and we do not hesitate to exercise that authority in this case. *See State ex rel. La Follette v. Circuit Court,* 37 Wis. 2d 329, 336, 155 N.W.2d 141, 145 (1967).

The Waukesha court argues vigorously that we may not issue a supervisory writ in the absence of a plain legal duty of the lower court. While it is generally

true that discretionary acts cannot be reviewed by supervisory writ, *see Dressler,* 163 Wis. 2d at 632, 472 N.W.2d at 537, we may intervene in appropriate cases to correct a lower court error when an appeal would be inadequate. *See Storer,* 131 Wis. 2d at 347, 388 N.W.2d at 635-36. This is such a case.

Because the Waukesha court committed reversible error when it exercised its jurisdiction over Tiffany and Myokra by entertaining the foster mother's guardianship, TPR and § 48.64(4)(c), STATS., petitions and holding contempt proceedings, we grant O'Connor's petition for a writ of prohibition to the Waukesha court. Implementation of our decision necessitates that the Waukesha court: (1) vacate all orders it has entered involving Tiffany and Myokra; (2) dismiss all pending proceedings, including the guardianship and TPR petitions; and (3) defer to the Milwaukee court's jurisdiction by refraining from exercising jurisdiction in matters involving Tiffany and Myokra.

O'Connor's petition was consolidated for disposition with two petitions asking this court to exercise its supervisory jurisdiction over the Honorable Mel Flanagan and the Milwaukee County circuit court. In one of those petitions, *State ex rel. Michael O. Bohren v. Circuit Court for Milwaukee County,* No. 95-0001-W, Attorney Michael O. Bohren, guardian ad litem appointed by the Waukesha court, asks this court to grant his petition for a writ of mandamus compelling the Milwaukee court to permit him to participate in proceedings before it.

Having held that the Waukesha court should have refrained from exercising jurisdiction in matters involving Tiffany and Myokra, it follows that the Waukesha court should not have appointed Attorney

Bohren as guardian ad litem. Therefore, he has no role in ch. 48, STATS., proceedings involving the children, and we need not address his petition in *State ex rel. Michael O. Bohren v. Circuit Court for Milwaukee County,* No. 95-0001-W, or motions filed by the aunt and Attorney Michael Vruno seeking permission to respond to the petition.[12]

*By the Court.*—Petition for a writ of mandamus to the circuit court for Milwaukee County in No. 95-0001-W denied; petition for a writ of prohibition to the circuit court for Waukesha County in No. 95-0036-W granted.

---

[12] The second petition, which pertains to Attorney Marjorie Wendt's attempt to participate in the Milwaukee proceedings as adversary counsel for the children, *State ex rel. Tiffany W. and Myokra W. v. Circuit Court for Milwaukee County,* No. 95-0045-W, will be decided in a future order of this court.